**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**RAUL RIVERA PEREZ**

    Petitioner,

        v.

**UNITED STATES OF AMERICA**

    Respondent.

Civ. No. 04-1577(PG)
(Re: Crim No. 97-245(PG))

## OPINION AND ORDER

Before the Court is the Magistrate Judge' Report and Recommendation ("R&R") (Docket No. 11) regarding Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255. (Docket No. 2.) Petitioner has filed objections. (Docket No. 14.) For the following reasons, the Court **ADOPTS IN PART the R&R** and **DENIES** Petitioner's motion.

## BACKGROUND

On February 5, 1998, Petitioner, along with fourteen co-defendants was indicted for participating in a conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §846. (Superseding Indictment, Docket No. 119, Crim. No. 97-245(PG)). On October 1, 1999, a jury found Petitioner guilty and he was sentenced on May 11, 2001, to life imprisonment and a supervised release term of five (5) years. (Docket No. 497 & 501, Crim. No. 97-245(PG)). On February 7, 2003, the Court of Appeals for the First Circuit affirmed Petitioner's conviction. (Docket No. 905 & 909, Crim. No. 97-245(PG); see also U.S. v. Nelson Rodriguez, 319 F.3d 12 (1st Cir. 2003). Petitioner filed a writ of certiorari before the Supreme Court which was denied on June 16, 2003. Rivera-Perez v. U.S., 539 U.S. 928(2003). Petitioner filed the pending motion to vacate within AEDPA's one year limitations period. (See R&R, Docket No. 2-4[1].) The matter was referred to Magistrate Judge Camille Velez-Rive. (Docket No. 3.) Thereafter, the government filed its response in opposition. (Docket No. 8.)

---

[1] The Magistrate Judge *sua sponte* considered the timeliness of Petitioner's motion and determined that the petition was timely. There being no objection to this finding, the Court ADOPTS this portion of the R&R.

Civ. No. 04-1577 (PG)                                                    Page 2

**DISCUSSION**

### I. Standard for Reviewing a Magistrate-Judge's R&R

Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 72; a District Court may refer dispositive motions to a Magistrate Judge for a Report and Recommendation. See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R.2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." U.S. v. Mercado Pagan, 286 F.Supp.2d 231, 233 (D.P.R.2003)(quoting 28 U.S.C. §§ 636(b)(1)). If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendations to which [an] objection is made." Felix Rivera de Leon v. Maxon Engineering Services, Inc., 283 F.Supp.2d 550, 555 (D.P.R.2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate", however, if the affected party fails to timely file objections," 'the district court can assume that they have agreed to the magistrate's recommendation'." Alamo Rodriguez, 286 F.Supp.2d at 146 (citation omitted).

### II. Analysis

Petitioner moves to vacate his sentence arguing ineffective assistance of counsel. He claims his counsel failed to obtain a waiver of his dual representation of another codefendant who had been previously tried, a hung jury resulted, and then pleaded guilty. He further claims his attorney did not properly review and become acquainted with the evidence on the case. Third, he avers counsel neglected to seek and relate plea offers. Finally, he argues that counsel failed to seek the recusal of the trial judge. The Magistrate Judge found all of Petitioner's claims without merit. Petitioner objects to some of the Magistrate Judge's findings. The Court reviews those portions of the R&R[2].

#### A. Conflict of Joint Representation

Petitioner claims his trial counsel was ineffective for not having

---

[2] Petitioner does not object to the recommendation regarding the Wiretap Evidence (R&R, Docket No. 11 at 5-6; Objections, Docket No. 14 at 6.) Accordingly, the Court ADOPTS that portion of the R&R.

Civ. No. 04-1577 (PG)                                                    Page 3

obtained a waiver of his dual representation of another co-defendant, who had previously entered a plea in a separate but related criminal case. The government's reply indicates this issue was raised on direct appeal and was ruled on the merits. The Magistrate Judge found that indeed the Court of Appeals addressed whether the trial court had failed to conduct a hearing regarding the possible conflict of the alleged dual representation[3]. She further determined that the Court of Appeals also considered whether there was an actual conflict and found there to be none. She recommends denial of Petitioner's motion inasmuch as he is revisiting issues which were raised on direct appeal.

Petitioner was represented by retained Attorney Edgar Vega ("Vega") and a court appointed counsel, Attorney Rafael Anglada ("Anglada"), who substituted prior counsel Thomas Lincoln ("Lincoln"). Vega had represented co-defendant Julio Ortiz Guevara ("Ortiz"), another member of the conspiracy, in a first and separate trial where a hung jury resulted. Defendant Ortiz thereafter pleaded guilty to the government's offer before Petitioner's trial began. Although the Court of Appeals cautioned that issues of ineffectiveness of counsel, such as joint representation, should not be entertained for the first time on direct appeal, it rendered its opinion because the critical facts were not genuinely in dispute and the record was sufficiently developed to allow a reasoned consideration of Petitioner's claim; now raised again in his 2255 motion. The Court of Appeals found that Petitioner's defense did not suffer from any conflict.

Petitioner objects to the Magistrate Judge' recommendation arguing that what the Court of Appeals actually reviewed was whether or not the district court erred in failing to advise him of his right to conflict free representation. He claims he is not revisiting the issue and that what he is asking the Court to determine is whether or not his counsel failed to properly address the conflict. Petitioner claims that the Magistrate Judge did not require a response from prior counsel thus it inappropriately relied on the government's vague and self-serving position.

Having reviewed the Court of Appeals' Opinion, the Court finds that it

---

[3] Petitioner had also raised the issue in a post-verdict motion.

Civ. No. 04-1577 (PG)                                                    Page 4

clearly addressed Petitioner's claim.

> The standard for an effect is that the defendant "might plausibly have pursued an alternative defense strategy, and that the alternative strategy was in conflict with, or may not have been pursued because of, [the attorney's] other loyalties or interests." ... The existence of an alternative strategy is most implausible here. Ortiz, the other defendant represented by Vega, was a minor figure in the conspiracy. Rivera, however, was the leader, and he eventually received a life sentence, the stiffest of any defendant. The suggestion that the government would have accepted a plea from Rivera in preference to one from Ortiz is untenable, even more so since Ortiz had already entered his plea before Rivera's trial began. Nor do we find any significant evidence that might have been helpful to Ortiz's sentencing but harmful to Rivera's trial, or vice versa. There is no indication that Rivera would have any good reason to call Ortiz as a witness. Finally, the potential impact of any conflict was further reduced because Rivera's previous appointed attorney remained in the case as co-counsel with Vega. In fact, it is reasonable to think that Rivera hired Vega precisely because he managed to get a hung jury for Ortiz, knowing the lawyer would complete his post-plea representation of Ortiz through sentencing. Rivera, it seems, wanted to have his cake and eat it too. On different facts, we might conclude that an underlying multiple representation presents a serious question of conflict. In Rivera's case, however, there is nothing more than speculation of possible conflict, which would not pass muster ....

Id., at 33-34. "[I]t is firmly settled that issues disposed of on a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." Singleton v. U.S., 26 F.3d 233, 240 (1st Cir.1994)(quoting Dirring v. U.S., 370 F.2d 862, 864 (1st Cir.1967)(citation omitted.) Therefore, the Court ADOPTS the Magistrate Judge's recommendation and DENIES Petitioner's motion as to this claim.

### B. Failure to Seek Recusal of Trial Judge

Petitioner also moves to vacate his sentence arguing that his counsel was ineffective for his failure to seek a recusal of the trial judge in light of an alleged volatile relationship between Petitioner and the Court. It is claimed the same trial judge had previously sentenced Rivera in connection with a prior criminal matter back in 1988. The government posits that pursuant to Liteky v. U.S., 510 U.S. 540(1994) a trial judge need not recuse himself when the source of the alleged personal bias or prejudice arises out of a judicial proceeding. The government argues that in order for Petitioner to succeed in his claim he needs to show a display of a deep-seated favoritism or antagonism that would make fair judgment impossible. Id.

Civ. No. 04-1577 (PG)                                                    Page 5

Petitioner claims an alleged animosity by the Court for having compelled him to review the evidence and confer with his attorney on penalty of waiving his right to have meaningful access to the evidence. The Magistrate Judge found that this argument was unintelligible and not enough to substantiate a claim of bias or prejudice. Accordingly, she found that Petitioner failed to make the required showing of bias or prejudice.

Petitioner objects arguing that there was a glaring antipathy between the trial judge and himself that warranted the filing of an affidavit pursuant to 28 U.S.C. §144. He insists that trial counsel's failure to do so was an egregious error. Furthermore, Petitioner posits that the Likety case is not to the contrary. He avers that although opinions a judge may have as a result of what he may have been learned in earlier proceedings are not subject to claims of bias or prejudice, id. at 555, the record here does not disclose merely opinions, but conduct on the part of the court that suggested a "pervasive bias" rendering the court unable to treat him fairly. Id. Petitioner claims he has a viable claim because his counsel's failure to protect him from the Court's animosity toward him resulted in unfair treatment which is the issue raised on collateral review, not the court's actual bias per se.

From Petitioner's bare-boned allegations, (see Docket No. 2, Memorandum at p. 30) it appears he claims that his counsel should have sought the Judge's recusal under 28 U.S.C.A. § 455(b)(1) which states that a Judge "... shall ... disqualify himself ... [w]here he has a personal bias or prejudice concerning a party." Id. In his objections, he claims his counsel was also ineffective for failing to file an affidavit pursuant to 28 U.S.C.A. § 144[4].

Under both sections 144 and 455(a)(b)(1), "there are two possible grounds

---

[4] 28 U.S.C.A. § 144 states:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Civ. No. 04-1577 (PG)                                                    Page 6

for a judge's disqualification: (1) the judge's impartiality may reasonably be questioned; or (2) the judge may have a personal bias or prejudice concerning a party." U.S. v. Kelley, 712 F.2d 884, 889 (1st Cir.1983)(citing U.S. v. Mirkin, 649 F.2d 78, 81 (1st Cir.1981); Union Independiente De Empleados De Servicios Legales v. P.R. Legal Services, Inc., 550 F.Supp. 1109, 1111 (D.P.R.1982). "To require disqualification, the alleged bias or prejudice must be both '(1) personal, i.e., directed against a party, and (2) extrajudicial'." Kelley, 712 F.2d at 889 (quoting U.S. v. Carignan, 600 F.2d 762, 763 (9th Cir.1979)). It is well-settled that "[f]acts learned by a judge while acting in his judicial capacity cannot serve as a basis for disqualification on account of personal bias." Kelley, 712 F.2d at 889 (citing U.S. v. Grinnell Corp., 384 U.S. 563, 583(1966); Berger v. U.S, 255 U.S. 22, 31(1921); Mirkin, 649 F.2d at 81; Union Independiente, 550 F.Supp. at 1111; see also In re Grand Jury Proceedings, 875 F.2d 927, 932 (1st Cir.1989); In re Cooper, 821 F.2d 833, 838 (1st Cir.1987).

Here, the basis for Petitioner's alleged bias or prejudice does not stem from an extrajudicial source, therefore, there was no basis for alleging prejudice under either 28 U.S.C.A. §§ 144 or 455(b)(1). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, **or of prior proceedings**, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555(emphasis ours). Nothing in the record indicates the trial judge displayed a deep-seated favoritism that would make fair judgment impossible and Petitioner has not proffered any evidence of such bias in his motion to vacate. Therefore, having reviewed the record, the Court finds that Petitioner's trial counsel was not ineffective inasmuch as he had no basis to seek the trial judge's recusal. Accordingly, the Court DENIES Petitioner's motion as to this issue.

### C.   Counsel's Lack of Familiarity with the Evidence

Petitioner also claims ineffective assistance because his trial counsel failed to be acquainted with the evidence of the case. The Magistrate Judge found upon reviewing the record that Petitioner's claim was without merit. The Magistrate Judge, however, only considered the argument raised regarding the

Civ. No. 04-1577 (PG)                                                    Page 7

introduction of a photograph of Petitioner in a Ford F-150 vehicle that he claims had not been given to his counsel in the box of evidence inherited from Mr. Lincoln. The Magistrate Judge did not address Petitioner's arguments regarding the statements concerning the uncharged murder of Roberto Cruz, the testimony by co-defendant Orozco, and the accurate transcripts and translations of intercepted conversations which were allegedly exculpatory.

It is well-settled that the "right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process. Kimmelman v. Morrison, 477 U.S. 365, 374(1986)(citation omitted). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Id. at 374-75 (citing Strickland v. Washington, 466 U.S.668, 686 (1984); U.S. v. Cronic, 466 U.S. 648, 655-657 (1984). To prevail in his claim, Petitioner "must show both that counsel's representation fell below an objective standard of reasonableness,... and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Kimmelman, 477 U.S. at 375 (citations omitted).

Petitioner claims that Vega's participation in his trial proceeded on the basis of discovery received and reviewed in connection with Vega's participation in co-defendant Ortiz' trial. Petitioner claims Vega filed no pretrial motions notwithstanding his entry into the case on August 29, 2000 almost a month before trial commenced on September 18. (Docket No. 730, Crim. No. 97-145(PG). Petitioner avers that the evidence regarding each co-defendant was quite different[5]. He insists that his counsel should have isolated, scrutinized, and discussed with him any evidence concerning his interplay with cooperating witness Miller in order for counsel to have made an informed decision of whether going to trial or seeking a plea, as well as for trial

---

[5] For example, Petitioner claims there was a difference in the involvement of government cooperating witness Miller who was the center of the charges against him, as it was Miller who ran the show and set the conspiratorial scenario. This differed completely from the focus of the involvement alleged regarding co-defendant Ortiz which had to do not necessarily with Miller, but with co-defendant Luis Caribe-Garcia ("Caribe").

Civ. No. 04-1577 (PG)                                                    Page 8

strategy. Petitioner insists that Vega's unfamiliarity with the evidence was patent throughout the trial.

Petitioner claims counsel at trial made reference to the photograph of himself in a Ford F-150 vehicle that was not in the well organized box of evidence he inherited from counsel Thomas Lincoln. During trial, the government expressed its intent to introduce a surveillance photo of Petitioner in a Ford F-150 Pickup Truck. Trial counsels were apparently unaware of the photo. Anglada informed the Court that he had never received the photo from prior counsel, however, AUSA Rodriguez verified his discovery letters and found that on June 8, 2000, the government provided to Petitioner's prior counsel physical inspection of additional items including the photo. Per discovery letter signed by former counsel Lincoln on June 8, 2000, during that inspection of additional items there was the photograph of Petitioner. Furthermore, in another discovery letter that was sent to co-counsel Luz Rios, the AUSA's office noted it sent her a photo copy of the photograph of Petitioner sitting in the Ford F-150 truck that was introduced into evidence. Petitioner argues that had his counsel seen the photo, it would have been brought to his attention to assist him in weighing the possibility of a motion to suppress, or the benefit of plea discussions. He claims that not only was he not given a copy of the photo, nor notice of it, but that the viability of suppression or other motions with respect to this photo was never discussed.

The Magistrate Judge found that even if the alleged photograph had not been provided, counsel was granted a short recess to become acquainted with this evidence. See Trial Transcript of 9/21/2000 at p. 154. Additionally, Petitioner at the time the objection was raised had two defense counsel. She found that there is no question that Anglada had received full discovery, in addition to the discussions on discovery with his former counsel Lincoln. See Trial Transcript 9/26/2000 at p. 579. In light of the above, the Magistrate Judge recommends denial.

Petitioner further claims that his counsel failed to familiarize themselves with the government's offer to introduce a statement made by him involving his participation in the uncharged murder of Roberto Cruz. He argues that instead of foreseeing that the government intended to introduce a

sensitive piece of evidence, worthy of scrutiny, review, consideration, and objection by way of a formal motion to dismiss, counsel permitted the government to present the evidence before the jury with minimal and grossly inadequate resistance.

On direct appeal, Petitioner argued that the trial judged erred under Fed.R.Evid. 403 in admitting the evidence regarding his role in the killing of Cruz, a murder alleged to have been committed in furtherance of the conspiracy. The Court of Appeals held that Petitioner's complaints about the reliability of the evidence were belied by the facts of the record because he had stated in taped conversations that he had killed the person in the photograph on page three of the August 11, 1997 edition of El Vocero newspaper which contained a photograph of a corpse later identified as Cruz. The Appellate Court further held that the district court did not abuse its discretion in finding that the testimony was probative. The testimony confirmed Petitioner's role in the conspiracy and tended to show that a 250-kilogram shipment had in fact been delivered. The Court found that Petitioner allegedly committed the murder in concert with a coconspirator and in furtherance of the conspiracy. Nelson-Rodriguez, 319 F.3d at 37[6].

Petitioner also submits that his counsel were unaware of the government's intent to introduce references to his participation in a transaction involving 120 kilograms of cocaine. Petitioner argues that because no 404(b) evidence had come in against co-defendant Ortiz, counsel Vega failed to see the importance of filing a motion to compel in advance of trial with regards to him.

Government witness Orozco testified that he was assisting with communication from a vessel coming from Colombia. That vessel contained 800 kilos of cocaine. He then testified that he did participate in additional drug loads after the initial load. Orozco testified that he participated with

---

[6] Petitioner also argued on appeal that the government violated discovery rules by disclosing an FBI Form 302 Report of the witness' debriefing only days before the testimony was to be introduced. See id. At trial, defense counsel objected to the admission of testimony covering topics in the 302 report, including Petitioner's claim of responsibility for the Cruz murder, on the grounds that the government's failure to disclose this document at an earlier date violated the Jencks Act, 18 U.S.C. § 3500. The Court of Appeals found the argument without merit inasmuch as pursuant to the Jencks Act, "the government does not need to disclose the statement or report of a government witness 'until said witness has testified on direct examination in the trial of the case'." Id. (quoting 18 U.S.C. § 3500(a)).

Civ. No. 04-1577 (PG)                                                    Page 10

Petitioner in or about 1993 in the importation of 2,500 pounds of marijuana and then 375 kilos of cocaine. Orozco testified that arrangements for the shipments to arrive were made but that they never did. Thereafter, counsel Vega objected and approached the bench. Counsel argued that he became aware that same day that the witness would testify that Petitioner was the sole participant in a transaction regarding 120 kilograms of cocaine, and that he was not given notice under 404(b). Vega informed the Court that he became aware of the information by coincidence during a recess where he reviewed the transcripts of the witness' prior testimony. Petitioner claims that this shows trial counsel had failed to familiarize himself with the discovery materials provided to him.

The record shows that the government gave ample notice of their 404(b) evidence[7]. Furthermore, Vega had knowledge of the information from the previous trial where Orozco testified the same thing.

Lastly, Petitioner submits that Vega was ineffective for his failure to investigate potentially exculpatory evidence because he did not obtaining true and accurate transcriptions of all recorded conversations. Prior to trial, Vega was well aware that the government's case surrounded numerous tape recorded conversations involving Petitioner. The discussions depicted on the tapes had involved the importation of large quantities of controlled substances. Petitioner claims that Vega had advised him that he was familiar with the conversations and would in fact see to their accurate presentation in evidence. Petitioner claims that counsel failed to obtain translations of the conversations and instead permitted the government to submit their versions of the conversations. He claims that had counsel reviewed each and every conversation involving Petitioner, a defense of entrapment may have been in place. Additionally, as to defense strategy, objecting to the inaccurate

---

[7] See 404(b) motions filed by the government in Crim. No. 97-245(PG): "Notice of intent to introduce 404(b) evidence by USA as to Raul Rivera-Perez" **(Docket No. 239)**; "Informative Motion by USA as to Raul Rivera-Perez pursuant to FRE 404(b) and 609; FRCrP 12(D)(2) and 16(E) (with attachments)"**(Docket No. 271)**; "Motion by USA as to Raul Rivera-Perez for 404(b) disclosure" **(Docket No. 571)**; "Motion by USA as to Raul Rivera-Perez for 404(b) disclosure" **(Docket No. 687)**. See also Minute entry of Status Conference called on 3/31/2000("GOVE HAS PROVIDED THE RULE 404(B) MATERIAL AS TO ALL THREE DEFENDANTS 1, 4, & 13")**(Docket No. 653);** and Order as to Raul Rivera-Perez ("The Ct ordered the gvt to make avilable [sic] to Atty. Lincoln the FBI agent in charge of the case Mr. Michael Plichta, so they can review all the evidence. The gvt will also provide by 6/16/00 all Jencks material.")**(Docket No. 682.)**

Civ. No. 04-1577 (PG)                                                  Page 11

portrayal of Petitioner as a person of violence should have been a prime concern. Of particular gravity, Petitioner claims, was the conversation in which Miller's discussed the news paper article concerning the Cruz' murder. Petitioner argues that Miller's testimony differed from the transcript and counsel failed to introduce the transcript of the conversation which was readily at his disposal. Petitioner submits that trial counsel's failure to "investigate" potentially exculpatory evidence fell outside the latitude given to legal professionals involved in a criminal defense, rendering his performance deficient. In establishing prejudice, Petitioner submits that had counsel presented proper transcripts and properly translated conversations, Petitioner's entrapment into the conspiracy would have been an issue for the jury to consider.

It must once again be noted that with regards to the testimony of the newspaper article, the facts of the record show that Petitioner stated in taped conversations that he had killed the person in the photograph on page three of the August 11, 1997 edition of El Vocero newspaper. See Nelson-Rodriguez, 319 F.3d at 37.

The Court has revisited the record of Petitioner's criminal case and having carefully reviewed the motion to vacate, as well as the objections filed, finds that trial counsel's representation was not below an objective standard of reasonableness. In light of the overwhelming evidence that was presented against Petitioner, any probability that the result of the proceeding would have been different is mere speculation. Through his 2255 motion, Petitioner is simply questioning Vega's, and to some extent Anglada's trial strategy arguing they "could have, should have, would have" done things differently "if" they had been acquainted with the evidence. The Court cannot conclude that counsel was ineffective simply because Petitioner thinks that his counsel should have considered a defense entrapment or because they should have argued that the transcripts of the recordings were inaccurate or should have more forcefully sought the exclusion of relevant evidence. See Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir.1983)("Counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or, as here, as a matter of fact and of the realities of proof, procedure, and trial

Civ. No. 04-1577 (PG)                                                  Page 12

tactics.") "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight. Knight v. Spencer, 447 F.3d 6, 15 (1st Cir.2006)(quoting Strickland, 466 U.S. at 689.) Indeed, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction ..., and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Knight, 447 F.3d at 15. (citation omitted). Only "where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it,' that the ineffective assistance prong is satisfied." Id. Here, there is no indication that counsel's decisions and actions, or lack thereof, were so unreasonable that no competent attorney would have made them. What is more, Petitioner has not met the Strickland prejudice prong. "[N]ot all errors by counsel are sufficient to meet the standard of a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different. Id.(citation omitted.) As the Court of Appeals characterized, the evidence against Rivera was "overwhelming". Nelson-Rodriguez, 319 F.3d at 48-49. He was the leader in the conspiracy and eventually received a life sentence, the stiffest of any defendant. See id. at 33-34. A cursory review of the record clearly shows that counsel's alleged errors could not have altered the outcome of the trial.

    The Court is unpersuaded by Petitioner's extensive argumentation particularly in light of the many opportunities the Court gave him to aid his counsel in preparation for trial. He now claims that they were unprepared. This is solely his own doing. He had three different attorneys yet he feels he not was effectively represented by counsel. It seems that only if counsel had obtained a non-guilty verdict would Petitioner be satisfied with their assistance. The record shows that Petitioner did not aid Mr. Lincoln in preparation for trial. (See Docket No. 653 & 695, Crim No. 97-245(PG)). At a Status Conference held on April 5, 2000, the Court ordered the Clerk to provide copies of the trial transcripts of the trial held from April 30 to October 1, 1999 involving seven other co-defendants charged in the same

Civ. No. 04-1577 (PG)                                                    Page 13

indictment with Petitioner so that he could review them together with Mr. Lincoln. On June 19, 2000, the case was called for Jury Trial. After several procedural events, out of the presence of the jury, Petitioner addressed the Court. The Court found that the results of the lack of communication of Petitioner with his attorney were of his own doing and that he wanted to manipulate the Court which it would not allow. It surfaced that Petitioner's family had been trying to get him another attorney despite the fact that they were all aware that the case was set for trial and that he already had assigned counsel. (See Docket No. 695) Indeed, the Court admonished that said attorney had been violating the cannons of ethics since she had been meeting with the defendant all the time knowing that he had another attorney representing him[8]. (Id.) In light of the situation, the Court had no choice but to continue the trial for June 22, 2000. The Court instructed Mr. Lincoln to meet with Petitioner at the Marshal's cell block from that day until Thursday of the same week to discuss all the evidence with him and for Petitioner to listen to the recordings. The Court warned Petitioner that if he did not take advantage of this opportunity to help his attorney to prepare for trial that it would be his own doing because the trial would not be continued again. (Id.)

    On June 22, 2000, the case was called for trial. The Court inquired from the parties whether they were ready for trial. Mr. Lincoln stated that he was ready but informed that even though the Court had granted some additional time to Petitioner to hear the tapes and examine the evidence he had been having difficulty with him. The Court inquired from Petitioner as to these allegations. The Court stated to Petitioner that it had heard from the Marshals that Petitioner had been threatening and bad mouthing Mr. Lincoln. The former stated that Petitioner had put him in a position where he could no longer represent him. Petitioner addressed the Court and informed that he could not communicate with his attorney and that his family had not been able to hire Attorney Linda George. Given the circumstances, the Court allowed Mr. Lincoln to withdraw. The trial was rescheduled yet again this time for

---

[8] The Court was referring to Attorney Linda George, Petitioner's current counsel who filed the 2255 motion on his behalf.

September 18, 2000. The Court informed Petitioner that the Sixth Amendment assures him the right to a competent attorney not an attorney of his liking. The Court further stated that it would not continue the trial anymore. Mr. Lincoln was told to bring all the discovery and the copy of the tapes to the Clerk's office by the next day for the new attorney to pick it up. (See Docket No. 696.) On July 12, 2000, the Court appointed Attorney Anglada. (Docket No. 705.) On August 28, 2000, Attorney Vega made his appearance. (Docket No. 725.) Attorney Anglada moved to withdraw from the case, however, the Court kept him as Petitioner's Court-appointed counsel to assist Mr. Vega during the trial. (See Endorsed Order, 9/6/2000.) On September 18, 2000 the trial began.

It is clear from the preceding discussion that Petitioner had ample opportunity to review all the evidence in the case with his first attorney, Mr. Lincoln, to consider plea agreement possibilities, pre-trial motions that could have been filed, and any other defense strategy that was available to him in light of the evidence of the case. Thus, when there was a change of counsel he could have instructed both Anglada and Vega to file whatever motions he sought were appropriate. The Court gave him additional time to prepare for trial and re-scheduled the trial twice solely for that reason, however, Petitioner did not make the most of the opportunities given to aid himself and his counsel in preparing for the trial. Indeed, the reason why there was a need for a change in counsel so close to trial was precisely because Petitioner was uncooperative with his counsel. Nevertheless, upon change of counsel, Mr. Anglada reviewed the well-organized evidence box Mr. Lincoln placed at the Clerk's office and was well acquainted with all the evidence regarding Petitioner's case. Mr. Anglada was there throughout the trial to aid Mr. Vega in the defense of Petitioner's case. Both Anglada and Vega are experienced trial attorneys and their decisions throughout the trial regarding the evidentiary issues Petitioner raises in his motion were not below an objective standard of reasonableness. "[I]neffective trial strategy is not the equivalent of ineffective assistance of trial counsel." Matthews v. Rakiey, 54 F.3d 908, 926 (1st Cir.1995)(citation omitted). Therefore, the Court DENIES Petitioner's motion.

### D.   Counsel's Failure to Seek Plea Offer

Petitioner claims counsel failed to seek from the government a plea

Civ. No. 04-1577 (PG)                                                    Page 15

offer. The government submits that since Petitioner had his first appointed counsel, the government submitted a letter indicating the potential plea agreement, with an initial recommendation of thirty (30) years of imprisonment. Under said proposal, the base offense level of 43 would have been reduced by three (3) level for acceptance of responsibility. The government alleges Petitioner was well aware of the plea offer, as shown in the record by letter acknowledging the same and by the transcript colloquy, but he declined to accept it. The record of the hearing held on June 22, 2000 shows that the government informed the court and Petitioner that change of plea deadlines had come and gone and it would not negotiate any plea.

The Magistrate Judge found that the record shows that Petitioner acknowledged to the Court that the attorney initially appointed to represent him brought a plea agreement the government made. (See Status Conference transcript of June 19, 2000, pp. 8, 14.) The Magistrate Judge determined that Petitioner seemed to complain that he was forced to go to trial. Since "there is no constitutional right to plea bargain" she found that his claim was without merit and recommends denial. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977)("there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty.") Petitioner objects to the recommendation.

The record shows that on April 5, 2000, a Status Conference was held as to three defendants including Petitioner who was at the time represented by Mr. Lincoln. Counsel Vega, although not his counsel at the time, was present on behalf of co-defendant Ortiz. The Court informed all counsel that Jury Trial was set for June 12, 2000 and that the defendants were granted until May 19 to advise the government and the Court if they would dispose of the case other than through trial. The Court warned that after that date, the government did not have to submit any plea agreements. The deadline came and went and Petitioner did not inform the Court that he would not go to trial. By the time Vega became Petitioner's counsel, that deadline had transpired and Vega was well-aware that the case would proceed to trial. (See Docket No. 653, Crim. No. 97-245(PG)). It is clear that the Court gave Petitioner enough time to seek a plea and he did not. He was made aware that after the deadline, the

Civ. No. 04-1577 (PG)                                                Page 16

government was in no position to offer further pleas. Therefore, Petitioner's claim that although represented by multiple counsel, somehow no plea offers were sought and none were obtained is belied by the record. Id. There is no indication in the record that Mr. Lincoln did not aid Petitioner in this regard. The government chose to go to trial. Hence, having reviewed the record, the Court ADOPTS the recommendation and DENIES the Petitioner's motion as to this issue also.

### F.   Failure to Grant an Evidentiary Hearing

Petitioner objects to the failure to grant the request for an evidentiary hearing, despite disputed material facts. He argues that the government's version of the record is materially contrary to his therefore, a hearing was warranted. Furthermore, he argues counsel's input is needed in order to determine whether appointed or retained counsel agree with the government's analysis and/or what are their respective positions concerning the Petitioner's claims.

"Evidentiary hearings on §2255 petitions are the exception, not the norm, and there is a heavy burden on the Petitioner to demonstrate that an evidentiary hearing is warranted." Moreno-Morales v. U.S., 334 F.3d 140, 145 (1st Cir.2003)(citing U.S. v. McGill, 11 F.3d 223, 225 (1st Cir.1993)). It is not necessary to hold an evidentiary hearing when the "2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moreno-Morales, 334 F.3d at 145 (citing U.S. v. DiCarlo, 575 F.2d 952, 954 (1st Cir.1978) (quotation omitted)).

As can be gleaned from the Court's discussion of Petitioner's 2255 motion, in light of the evidence in the record, he is not entitled to relief. Hence, an evidential hearing is not required. See Barrett v. U.S., 965 F.2d 1184, 1186 (1st. Cir. 1992); see also Barrett v. U.S., 965 F.2d 1184, 1186(1st Cir.1992)("if [petitioner's] claim is based upon facts with which the trial court, through review of the record or observation at trial, is familiar, the court may make findings without an additional hearing")(citations omitted).

### G.   Blakely issue

The Magistrate Judge held in abeyance two motions for Leave to Amend the petition to incorporate arguments under Blakey pending resolution by the

Supreme Court of the legal arguments which it had recently entertained and was promptly to resolve regarding the constitutionality and other aspects of the federal Sentencing Guidelines. (See R&R, Docket No. 11 at 10.) Thereafter, the Supreme Court issued the Booker ruling addressing the issues raised in Blakely. See U.S. v. Booker, 543 U.S. 220(2005)(concluding that the Sixth Amendment as construed in Blakely applies to the Federal Sentencing Guidelines). In Booker, however, the Supreme Court stated that its "holdings-both the Sixth Amendment holding and [the] remedial interpretation of the Sentencing Act-" would apply "to all cases on direct review" only. Id., at 268. Accordingly, the Court denied Petitioner's request for leave to amend. (See Docket No. 18.) Therefore, this portion of the R&R is moot.

## CONCLUSION

WHEREFORE, for the preceding reasons the Court **ADOPTS IN PART** the R&R **(Docket No. 11)** and **DENIES** Petitioner's motion to vacate[9] **(Docket No. 2.)** Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, August 27, 2007.


                                              S/JUAN M. PEREZ-GIMENEZ
                                              U. S. DISTRICT JUDGE

---

[9] Petitioner also raised in his 2255 motion an issue with regards to the testimony from government witnesses concerning violence against witnesses. The Magistrate Judge did not address it. Petitioner simply mentions the issue without any support or development of its argument. "[I]t is the long standing precedent in this Circuit that legal arguments alluded to in a perfunctory manner but unaccompanied by a developed argumentation, are deemed abandoned." Gonzalez-Lasalle v. U.S., Civil No. 05-1682(DRD), 2006 WL 1897031, *2 (D.P.R. July 10, 2006)(citing U.S. v. Casas, 425 F.3d 23, 30 (1st Cir.2005); U.S. v. Ramirez-Ferrer, 1995 WL 237041, (1st Cir.1995); U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)). Indeed, "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones". Zannino, 895 F.2d at 17. "[A] litigant has an obligation to spell out its arguments square and distinctly, or else forever hold its peace". " Gonzalez-Lasalle, 2006 WL 1897031 at *2(internal quotation marks and citations omitted). See Zannino, 895 F.2d at 17("[J]udges are not expected to be mindreaders.") Therefore, because Petitioner "merely adverts to the claim in a perfunctory fashion ... without 'developed argumentation'," the Court will not consider it. Barrett v. U.S., 965 F.2d 1184, 1194 (1st Cir. 1992)(quoting Zannino, 895 F.2d at 17).